D. Maimon Kirschenbaum
Josef Nussbaum
JOSEPH KIRSCHENBAUM LLP
32 Broadway, Suite 601
New York, NY 10004
(212) 688-5640
(212) 688-2548 (fax)

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x
JAVIER TORRES SANCHEZ and OSCAR
DAVID POSADA, on behalf of themselves
and others similarly situated,

                  Plaintiffs,

      v.

KTG MULTISERVICES INC., AAC
MAINTENANCE CORP., ANDREA
CATALINA GONZALEZ, ALVEIRO
ECHEVERRI, ALEJANDRO ACOSTA,
and ROSA MARTINEZ,

                  Defendants.
--------------------------------------------------------x

**CLASS AND COLLECTIVE ACTION
COMPLAINT**

**DEMAND FOR JURY TRIAL**

      Plaintiffs Javier Torres Sanchez and  Oscar David Posada (hereinafter referred to as

"Plaintiffs"), by and through their attorneys, Joseph Kirschenbaum LLP, hereby bring this

complaint against Defendants KTG Multiservices Inc., AAC Maintenance Corp., Andrea

Catalina Gonzalez, Alveiro Echeverri, Alejandro Acosta  and Rosa Martinez (hereinafter

referred to as "Defendants" or "KTG").

## INTRODUCTION

      1.     This action is brought by Plaintiffs, on behalf of themselves as well as a putative

collective and class, arising from Defendants' various willful and unlawful employment policies,

patterns and/or practices that violate the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL").

2.      Plaintiffs worked for Defendants as cleaning and building maintenance workers.

3.      Defendants operated a cleaning services company whereby they entered into contracts with customers to perform various recurring cleaning and maintenance services.

4.      Specifically, KTG advertises itself as being "specialists in integral cleanliness services to companies" by providing, among other things, "maintenance," "stripper and wax," and "flood and fire restoration," and "post construction cleaning" services. (*See* https://ktgmultiservices.com/services.html accessed on January 11, 2021.)

5.      At KTG, the individuals that the company employs to perform cleaning and maintenance services are called "cleaners."

6.      Defendants operated a scheme whereby they classified cleaners, such as Plaintiffs and their coworkers, as independent contractors instead of employees to avoid paying them overtime premiums for the hours they worked in excess of 40 in a week.

7.      Plaintiffs and their coworkers worked significant overtime for Defendants.

8.      As a result of the failure to pay proper overtime wages, Defendants willfully and intentionally committed widespread violations of the FLSA and NYLL.

9.      To be sure, Defendants controlled all aspects of Plaintiffs' and Plaintiffs' coworkers' work for the KTG.

10.     For example, Defendants determined the days Plaintiffs worked, the time their shifts commenced and concluded, the rates they would be paid at, and the attire they were required to wear.

11.     Similarly, Plaintiffs were never in business for themselves but were at all times reliant on Defendants for their income.

12.     Plaintiffs allege pursuant to New York Labor Law § 195 §, § 650 *et seq*. and 12 New York Codes, Rules and Regulations § 142 ("NYCRR") that they are entitled to recover from the Defendants: (1) unpaid overtime compensation, (2) "spread of hours" pay, (3) up to five thousand dollars ($5,000) per Plaintiff and Class Member (as defined below) for Defendants' failure to provide a Time of Hire Notice detailing rates of pay and payday, (4) up to five thousand dollars ($5,000) per Plaintiff and Class Member for Defendants' failure to provide paystubs that accurately and truthfully lists employee's wages, (5) liquidated damages equal to the sum of unpaid minimum wages, unpaid "spread of hours" premium, unpaid overtime under NY Wage Theft Prevention Act, and late paid wages, (6) 9% simple prejudgment interest provided by NYLL, (7) post-judgment interest, and (8) attorney's fees and costs.

## JURISDICTION AND VENUE

13.     This Court has original federal question jurisdiction under 28 U.S.C. § 1331 because this case is brought under the Fair Labor Standards Act, 29 U.S.C. § 201, et seq. ("FLSA").  This Court has supplemental jurisdiction over the New York state law claims, as they are so related to the claims in this action within the Court's original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution

14.     Venue is proper in this District because Defendants conduct business in this District and Plaintiffs worked in this District, and many of the acts and/or omissions giving rise to the claims herein alleged took place in this District.

## THE PARTIES

15.     All Defendants are hereinafter collectively referred to as "Defendants."

16.     Defendant KTG Multiservices Inc. is a New York corporation that owns/operates KTG Multiservices, also known as "KTG Cleaning Corp.," a cleaning and maintenance services company (collectively hereinafter referred to as "KTG").

17.     KTG's head offices are located at 47-10 104th Street, Suite 4A, Corona, NY 11368.

18.     Upon information and belief, Defendant Andrea Catalina Gonzalez is an owner, officer, director and/or managing agent of KTG Multiservices Inc. whose addresses is unknown at this time and who participated in the day-to-day operations of A KTG Multiservices Inc. and acted intentionally and maliciously and is an "employer" pursuant to the FLSA, 29 U.S.A §203(d) and Regulations promulgated thereunder, 29 C.F.R. § 791.2, as well as New York Labor Law § 2 and the Regulations thereunder, and is jointly and severally liable with KTG Multiservices Inc.

19.     Defendant, AAC Maintenance Corp., is a business entity organized, and existing under the laws of the State of New York, with a principal place of business at 2351 White Oak Court, East Elmhurst, New York 11369

20.     Upon information and belief Defendant Alveiro Echeverri, is an owner, officer, director and/or managing agent of KTG Multiservices Inc. and AAC Maintenance Corp., whose addresses is unknown at this time and who participated in the day-to-day operations of KTG Multiservices Inc. and AAC Maintenance Corp. and acted intentionally and maliciously and is an "employer" pursuant to the FLSA, 29 U.S.A §203(d) and Regulations promulgated thereunder, 29 C.F.R. § 791.2, as well as New York Labor Law § 2 and the Regulations thereunder, and is jointly and severally liable with KTG Multiservices Inc. and AAC Maintenance Corp.

21.     Upon information and belief, Defendant, Alejandro Acosta, is an owner, officer, director and/or managing agent of AAC Maintenance Corp. whose addresses is unknown at this time and who participated in the day-to-day operations of AAC Maintenance Corp. and acted

intentionally and maliciously and is an "employer" pursuant to the FLSA, 29 U.S.A §203(d) and Regulations promulgated thereunder, 29 C.F.R. § 791.2, as well as New York Labor Law§ 2 and the Regulations thereunder, and are jointly and severally liable with AAC Maintenance Corp.

22.     For example, Defendant Acosta signed paychecks that were issued to Plaintiffs.

23.     Upon information and belief, at all relevant times, Defendants' businesses have had annual gross sales in excess of $500,000.

24.     At all relevant times, Defendants' businesses have been, and continue to be, "enterprises engaged in commerce" within the meaning of the FLSA.

25.     To the extent KTG Multiservices Inc. and AAC Maintenance Corp. are actually separate corporations, each engage in related activities, namely, operating and providing general cleaning services. The corporations shared Plaintiff and other similarly situated employees, acted in the interest of each other with respect to employees, paid their employees by the same method, shared control over the employees, and are themselves under common control and management.

26.     The corporations are owned, operated, and controlled by the same owner, or owner group, operating as a unified operation and, upon information and belief, each provide mutually supportive services to the substantial advantage of the other such that each entity is operationally interdependent of each other and, therefore, may be treated as a single enterprise.

27.     For example, during the time that Plaintiffs worked for Defendants, they at different times received paychecks that issued by both KTG Multiservices Inc. and AAC Maintenance Corp.

28.     The corporate defendants share a common commercial business purpose, namely, providing general cleaning services.

29.     KTG has a general management team and centralized payroll and scheduling practices.

30.     The management team includes Defendants Andrea Catalina Gonzalez, Alveiro Echeverri, and Rosa Martinez.

31.     KTG's website, https://ktgmultiservices.com/, refers to Ms. Gonzalez as the company's "CEO."

32.     As owner and CEO, Ms. Gonzalez has ultimate and actual authority over Plaintiffs' rates of pay, schedules, hiring and firing, and maintenance of employment records.

33.     KTG's website refers to Alveiro Echeverri as the KTG's "COO."

34.     As COO, Mr. Echeverri has ultimate and actual authority over Plaintiffs' rates of pay, schedules, hiring and firing, and maintenance of employment records.

35.     KTG's website refers to Rosa Martinez as the KTG's "Operations Manager."

36.     As Operations Manager, Ms. Martinez has authority over Plaintiffs' rates of pay, schedules, interviewing, hiring and firing, and maintenance of employment records.

37.     Plaintiff Javier Torres Sanchez worked for KTG as a cleaner for more than two years, from January 2018 until March 2020.

38.     Plaintiff Oscar David Posada worked for KTG as a cleaner for almost three years, from approximately November or December 2017 until October 2020.

## COLLECTIVE ACTION ALLEGATIONS

39.     Plaintiffs bring the federal law causes of action on behalf of themselves and all other similarly situated cleaners and maintenance employees at KTG (the "Collective").

40.     Plaintiffs are appropriate representatives of this collective action under 29 U.S.C. § 216(b).

41.     Plaintiffs and the other cleaners/maintenance employees ("FLSA Collective Plaintiffs") are similarly situated in that they are all subject to Defendants' common plan or

practice of designating them as independent contractors (when in fact the economic reality and the extent of control Defendants exerted over them rendered them employees). Defendants routinely required and require these employees to work weekly hours in excess of forty but do not pay them overtime compensation at time and one-half their regular rate.

## CLASS ALLEGATIONS

42.     Plaintiffs bring the state law causes of action under Rule 23 of the Federal Rules of Civil Procedure on behalf of themselves and all persons who work or have worked for Defendants as cleaners in New York State between the date of the filing of this Complaint and the date of final judgment in this matter (the "Class" or "Class Members").

43.     During Plaintiffs' employment with Defendants, they consistently worked over 40 hours per week without receiving overtime compensation.

44.     Likewise, because Defendants misclassified them as "independent contractors," all Rule 23 Class Members who worked over 40 hours per week were not paid overtime compensation, in violation of the NYLL.

45.     The persons in the  Class identified above are so numerous that joinder of all Members is impracticable.  Although the precise number of such persons is not known to the Plaintiffs, the facts on which the calculation of that number can be readily determined by Defendants' records which are presently within the sole control of Defendants.

46.     The number of class Members exceeds 40 as the size of the Class is at least 50 individuals.

47.     Defendants labeled all of its cleaners as "independent contractors" rather than employees and acted or refused to act on grounds applicable to the entire Class, thereby making

appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole.

48.    The state law causes of action are properly maintainable by Plaintiffs as a class action under Federal Rule of Civil Procedure 23(b)(3).  There are questions of law and fact common to the Class that predominate over any questions solely affecting individual members of the Class, including but not limited to:

   a.  Whether as a matter of law Defendants' cleaners are misclassified employees or in business for themselves as independent contractors;

   b.  whether Defendants violated New York Labor Law ("NYLL"), Articles 6 and 19, and the supporting New York State Department of Labor regulations concerning the employment of  Plaintiffs and Class Members;

   c.  whether Defendants refused to pay  Plaintiffs and the Class Members overtime rates of pay for hours worked in excess of 40 hours per workweek;

   d.  whether Defendants failed to keep true and accurate time records for all daily and weekly hours worked by Plaintiffs and the Class Members, and other payroll records required by the NYLL;

   e.  Whether Defendants paid employees New York's "spread of hours" premium when their workdays exceeded 10 hours;

   f.  whether it was Defendants' policy or practice to fail to furnish Plaintiffs and the Class with wage notice at the time Class Members were hired as required by the NYLL;

   f.  whether it was Defendants' policy or practice to fail to furnish Plaintiffs and the Class with an accurate statement of wages, hours worked, rates paid, and gross wages as required by the NYLL;

   g.  whether it was Defendants' policy or practice to fail to furnish Plaintiffs and the Class with weekly paychecks;

   h.  whether Defendants' policy of failing to pay Plaintiffs and the Class  in accordance with New York law was  willful; and

   i.  the method of calculating unpaid wages due, damages and penalties.

49.     Plaintiffs' claims are typical of the claims of the  Class.  Plaintiffs and the members of the  Class work or have worked for Defendants as described below and have all been subjected to Defendants' policy of misclassifying them as independent contractors and failing to pay them earned wages.

50.     Plaintiffs and the members of the Class have been subject to Defendants' policy of failing to pay them overtime and making unlawful deductions to their pay.  Plaintiffs and the Class Members are protected by the same statutory rights as employees under the NYLL to be paid overtime wages for weekly hours worked over forty, free and clear of unlawful deductions.  Plaintiffs and the members of the Class have all sustained similar types of damages as a result of Defendants' failure to comply with the NYLL.  Plaintiffs and the members of the Class have all been commonly injured in that they have all been denied earned wages due to Defendants' uniform policies, practices, and procedures.

51.     Defendants act and refuse to act on grounds applicable to the Class, in current violation of the NYLL with respect to the entire Class, thereby making declaratory relief with respect to the entire Class appropriate.

52.     Plaintiffs will fairly and adequately represent and protect the interests of the Class. Plaintiffs understand that, as the class representatives, they assume a fiduciary responsibility to the Class to represent its interests fairly and adequately.  Plaintiffs recognize that as the class representatives, they must represent and consider the interests of the Class just as they would represent and consider their own interests.  Plaintiffs understand that in decisions regarding the conduct of the litigation and its possible settlement, they must not favor they own interests over those of the Class.  Plaintiffs recognize that any resolution of a class action lawsuit, including any settlement or dismissal thereof, must be in the best interests of the Class. Plaintiffs

understand that in order to provide adequate representation, they must remain informed of developments in the litigation, cooperate with class counsel by providing them with information and any relevant documentary material in their possession, and testify, if required, in a deposition and in trial.

53.     Plaintiffs have retained counsel competent and experienced in complex class action employment litigation.

54.     A class action is superior to other available methods for the fair and efficient adjudication of this litigation – particularly in the context of wage litigation like the present action, where individual plaintiffs may lack the financial resources to vigorously prosecute a lawsuit in federal court against these large corporate defendants.  The members of the Class have been damaged and are entitled to recovery as a result of Defendants' common and uniform policies, practices, and procedures.  Although the relative damages suffered by individual members of the Class are not *de minimis*, such damages are small compared to the expense and burden of individual prosecution of this litigation.  In addition, class treatment is superior because it will obviate the need for unduly duplicative litigation that might result in inconsistent judgments.

## STATEMENT OF FACTS

55.     KTG has a general management team and centralized payroll and scheduling practices.

56.     The management team includes Andrea Catalina Gonzalez, Alveiro Echeverri, and Rosa Martinez.

57.     Ms. Gonzalez is the managing owner of KTG.

58.     KTG's website, https://ktgmultiservices.com/, refers to Ms. Gonzalez as KTG's "CEO."

59.     As owner and CEO, Ms. Gonzalez has ultimate and actual authority over Plaintiffs' rates of pay, schedules, hiring and firing, and maintenance of employment records.

60.     Ms. Gonzalez exercised this control on a daily basis by, among other things, hiring and firing employees, promoting employees and scheduling employees.

61.     Ms. Gonzalez also decided employees rates of pay.

62.     KTG's website refers to Alveiro Echeverri as KTG's "COO."

63.     Upon information and belief Mr. Echeverri is also an owner of AAC Maintenance Corp and KTG.

64.     As COO, Mr. Echeverri has ultimate and actual authority over Plaintiffs' rates of pay, schedules, hiring and firing, and maintenance of employment records.

65.     Upon information and belief Mr. Acosta is also an owner of AAC Maintenance Corp.

66.     As an owner, Mr. Acosta has ultimate and actual authority over Plaintiffs' rates of pay, schedules, hiring and firing, and maintenance of employment records.

67.     At various times throughout their employment, Plaintiffs received paychecks from AAC Maintenance Corp., KTG and Ms. Gonzalez, personally.

68.     At various times throughout their employment, Plaintiffs' paychecks were singed by Mr. Acosta and Ms. Gonzalez.

69.     KTG's website refers to Rosa Martinez as the KTG's "Operations Manager."

70.     As Operations Manager, Ms. Martinez has authority over Plaintiffs' rates of pay, schedules, interviewing, hiring and firing, and maintenance of employment records.

71.     Ms. Martinez exercised this control on a daily basis by, among other things, hiring and firing employees, promoting employees and scheduling employees.

72.     Ms. Martinez also decided employees rates of pay.

73.     Ms. Gonzalez, Mr. Echeverri and Ms. Martinez all worked together in KTG's head office in Queens.

74.     Employees pay records were stored at this office and were under the custody and control of Defendants Gonzalez, Echeverri and Martinez

75.     Defendants controlled Plaintiffs and other cleaners work by dispatching them to the KTG's clients to provide cleaning and maintenance services.

76.     Specifically, Defendants held ongoing contracts with their customers to provide cleaning and maintenance services to those customers.

77.     These contracts were agreed to between Defendants and their customers before any services were provided by the cleaners.

78.     Plaintiffs and the other cleaners did not have any business relationship with KTG's customers.

79.     The cleaners were always paid and controlled by KTG, not by the customers at whose premises the cleaners performed their cleaning and maintenance duties.

80.     To be sure, all aspects of Plaintiffs and other cleaners work performed for KTG were controlled by the company.

81.     Specifically, KTG determined the days and hours that Plaintiffs and other cleaners worked.

82.     KTG also determined the hourly rates of pay that Plaintiffs and other cleaners were paid per hour.

83.     Plaintiffs did not have any input into the hourly rate they received, and these amounts were imposed by KTG and were never subject to any between the parties.

84.     At all relevant times, Plaintiffs were paid between $11 and $16 an hour.

85.     At certain times, KTG required Plaintiffs and other cleaners to wear specific uniforms.

86.     These uniforms were not selected by the cleaners but were imposed by KTG.

87.     Plaintiffs had no opportunity for profit or loss from the work they performed for KTG.

88.     Rather, Plaintiffs' income was always at the discretion of KTG, *i.e.*, Plaintiffs were always paid an hourly rate which depended on how much KTG wanted to pay and how many hours KTG required the cleaners to work.  There was no opportunity for any other income from these jobs.

89.     Plaintiffs and the other cleaners were never responsible for their own cleaning materials or work tools.

90.     Rather, Defendants always provides Plaintiffs and the other cleaners with the cleaning products and machinery they would use as part of their work.

91.     The cleaning and maintenance jobs that Plaintiffs and the other cleaners were tasked with performing did not require any skill at all.  These tasks always involved rudimentary cleaning and maintenance services.

92.     Defendants would generally issue Plaintiffs and the other cleaners an IRS-1099 Form at the end of each year.

93.     However, this tax characterization was imposed by Defendants on the cleaners and the cleaners had no input into this decision.

94.     In fact, KTG abided by this policy only so long as it served their own benefit.

95.     For example, in late 2019, Plaintiff Sanchez was injured in a work accident and commenced a worker compensation proceeding.  In that proceeding, it was more favorable for Defendants if Mr. Sanchez was characterized as an employee instead of as an independent contractor.  Accordingly, in late 2019, Defendants began classifying Mr. Sanchez as an employee and issued an IRS W-2 Form to him at the end of the year.

96.     To be sure, Mr. Sanchez still received a 1099 Form for the work he performed in. the first few months of 2019 and thus was issued both a 1099 Form for the first part of 2019 and a W-2 Form for the latter part of 2019 even though his job duties did not change at all.

97.     Defendants committed the following alleged acts knowingly, intentionally and willfully against the Plaintiffs and the Class.

98.     At all relevant times, Defendants knowingly and willfully failed to pay Plaintiffs their lawfully overtime compensation of one- and one-half times (1.5x) their regular rate of pay for all hours worked over forty (40) in a given workweek as required under federal and state law.

99.     While employed by Defendants, Plaintiffs were not exempt under state laws requiring employers to pay employees overtime.

100.    At all relevant times, Defendants knowingly and willfully failed to pay Plaintiffs and other cleaners New York's "spread of hours" premium at the full New York minimum wage rate for workdays that Plaintiffs and cleaners worked that spanned more than ten hours.

101.    Defendants failed to keep full and accurate records of Plaintiffs' hours and wages.

102.    When Plaintiff Posada initially started working for Defendants, he worked at men's clothing store in Manhattan.

103.     During this time--from approximately November/December 2017 until approximately March 2018--Mr. Posada worked for Defendants seven days a week from approximately 12 p.m. until 8 p.m.

104.     After a few months this schedule became unbearable for Mr. Posada to work (seven days a week with no days off) and he asked KTG's management to have one or two days off per month.

105.     KTG granted this request, and from approximately late March 2018 until approximately April/May 2018, Mr. Posada worked the same schedule at the men's clothing store with two or three days off per month.

106.     In August 2018, Mr. Posada began working for Defendants at a supermarket called Bingo Supermarket ("Bingo") in Brooklyn.

107.     Mr. Posada continued working at Bingo until he ceased working for KTG in October 2020.

108.     When Mr. Sanchez initially commenced working for KTG, he worked in an apartment building five days a week from approximately 7 or 8 a.m. am until 11 or 12 p.m.

109.     After his first two weeks working for KTG, the company instructed him to work at Bingo in Brooklyn.

110.     For approximately two weeks, Mr. Sanchez worked at both the apartment building and at Bingo five days a week.

111.     During those two weeks, Mr. Sanchez would continue working the same schedule of approximately four hours each day at the apartment building.  He would then proceed to Bingo where he would work from approximately 3 p.m. until 12 a.m. for six days each week.

112.    Accordingly, during this time, Mr. Sanchez worked 13 hours on five days a week and 9 hours on the sixth day or a total of 74 hours each week.

113.    After two weeks of working this schedule, it became too difficult for Mr. Sanchez and he requested to be transferred to Bingo full time.

114.    During the times that Messrs. Posada and Sanchez worked at Bingo, they and the other cleaners worked the schedule set forth below.

115.    The cleaning crew was divided into individuals who worked the "morning" shift and the "afternoon" shift.

116.    Cleaners who worked the "morning" shift generally worked on the following schedule. The cleaners would work from approximately 5 or 6 a.m. until 3 p.m. on Sundays, Mondays, Tuesdays, Wednesdays and Thursdays. On Fridays, the morning shift was from 5 or 6 a.m. until between 3 and 5 p.m.

117.    Cleaners who worked the "afternoon" shift generally followed the following schedule. The cleaners would work from approximately 3 p.m. until 1 a.m. on Sundays, Mondays and Tuesdays, and from approximately 3 p.m. until 3 a.m. on Wednesdays and Thursdays. Bingo was only open on Saturdays in the winter months (*i.e.*, between November and April) and during this time was only open in the evenings. On the occasions that Bingo was open on Saturday evenings, the "afternoon" shift was from 9 p.m. until 4 a.m. There was no afternoon shift on Fridays.

118.    Cleaners who were scheduled to work morning shifts would be scheduled to work those shifts for the entire week and, similarly, cleaners who were scheduled to work the afternoon shifts were scheduled to work those shifts for the entire week.

119.    However, there were occasions, that Plaintiffs would cover a shift for another employee and would work both a morning and afternoon shift in the same day.

120.    In addition, the shifts did not adhere to a strict schedule and cleaners frequently had to stay after the times their shifts were scheduled to conclude.

121.    In short, cleaners generally worked more than 53 hours each week and, oftentimes, they would work as many as 60 or 65 hours in a week.

122.    From conversations with cleaners who worked at other KTG managed job sites, Plaintiffs are aware that KTG's cleaners frequently worked 6 or 7 days per week and frequently worked shifts that spanner more than 10 hours in days.

123.    At all relevant times, Defendants knowingly and willfully failed to provide Plaintiffs and similarly situated employees with Time of Hire Notice in (1) English and (2) Spanish (Plaintiffs' primary language) reflecting true rates of pay and payday as required by NYLL §195(1).

124.    At all relevant times, Defendants knowingly and willfully failed to provide Plaintiffs and other cleaners with wage statements that listed employee's name, employer's name, employer's address and telephone number, employee's rate or rates of pay, any deductions made from employee's wages, any allowances claimed as part of the minimum wage, and the employee's gross and net wages for each pay day as required by NYLL §195(3).

125.    Defendants generally issued paychecks to Plaintiffs on a bi-monthly basis.

126.    However, on many occasions, Defendants would not issue paychecks on time (*i.e.*, on the bi-monthly date the checks were due) and the checks would only be issued days and weeks after the checks were due.

127.     Defendants committed the foregoing acts against Plaintiffs, the FLSA Collective

Plaintiffs, and Class Members knowingly and willfully.

**FIRST CLAIM FOR RELIEF**
**(FLSA Overtime Violations, 29 U.S.C. § 201, et seq.)**
**(Brought by Plaintiffs on Behalf of Themselves**
**and the FLSA Collective Plaintiffs)**

128.     Plaintiffs, on behalf of themselves and other FLSA Collective Plaintiffs, realleges

and incorporate by reference all previous paragraphs.

129.     Throughout the statute of limitations period covered by these claims, Plaintiffs

and the other FLSA Collective Plaintiffs worked in excess of forty (40) hours per workweek.

130.     At all relevant times, Defendants operated under a decision, policy and plan, and

under common policies, programs, practices, procedures, protocols, routines and rules of

willfully failing and refusing to pay the FLSA Collective Plaintiffs the appropriate overtime rate

for work in excess of forty (40) hours per workweek, and willfully failing to keep records

required by the FLSA even though the FLSA Collective Plaintiffs have been and are entitled to

overtime.

131.     At all relevant times, Defendants willfully, regularly and repeatedly failed to pay

Plaintiffs and the FLSA Collective Plaintiffs at the required overtime rates for hours worked in

excess of forty (40) hours per workweek.

132.     Plaintiffs, on behalf of themselves and the FLSA Collective Plaintiffs, seeks

damages in the amount of their respective unpaid overtime compensation, liquidated (double)

damages as provided by the FLSA for overtime violations, attorneys' fees and costs, pre- and

post-judgment interest, and such other legal and equitable relief as this Court deems just and

proper.

## SECOND CLAIM FOR RELIEF
**(New York State Overtime Violations, N.Y. Lab. L. §§ 650 *et seq.*
N.Y. Comp. Codes R. & Regs. Tit. 12, § 142)
(Brought By Plaintiffs on Behalf of Themselves and the Class)**

133.    Plaintiffs reallege and incorporate by reference all preceding paragraphs as if they were set forth again herein.

134.    It is unlawful under New York law for an employer to suffer or permit a non-exempt employee to work without paying overtime wages for all hours worked in excess of forty (40) hours in any workweek.

135.    Defendants willfully, regularly and repeatedly failed to pay Plaintiffs at the required overtime rate of one-and-one-half times the full New York minimum wage for hours worked in excess of forty (40) hours per workweek.

136.    As a result of Defendants' willful and unlawful conduct, Plaintiffs and members of the Class are entitled to an award of damages, including liquidated damages, in amount to be determined at trial, pre- and post-judgment interest, costs and attorneys' fees, as provided by N.Y. Lab. Law § 663.

## THIRD CLAIM FOR RELIEF
**(New York State Notice Requirements, N.Y. Lab. L. §§ 195, 198)
(Brought By Plaintiffs on Behalf of Themselves and the Class)**

137.    Plaintiffs reallege and incorporate by reference all preceding paragraphs as if they were set forth again herein.

138.    Defendants did not provide Plaintiffs and members of the Class with the notices/wage statements required by N.Y. Lab. Law §§ 195(1) and 195(3).

139.    As a result of Defendants' willful and unlawful conduct, Plaintiffs and members of the Class are entitled to an award of damages, including liquidated damages, in amount to be

determined at trial, pre- and post-judgment interest, costs and attorneys' fees, as provided by

N.Y. Lab. Law § 663.

**FOURTH CLAIM FOR RELIEF**
**(New York State Spread of Hours Violations**
**New York Minimum Wage Act, N.Y. Stat. § 650 et seq.,**
**N.Y. Comp. Codes R. & Regs. Tit. 12, § 142)**
**(Brought by Plaintiffs on Behalf of Themselves and the Class)**

140.    Plaintiffs, on behalf of themselves and the members of the Class, reallege and

incorporate by reference all preceding paragraphs as if they were set forth again herein.

141.    Throughout the relevant period, Plaintiffs and Class members regularly worked

shifts that spanned over ten hours in a day.

142.    Defendants did not keep records of all of Plaintiffs' and Class members' hours

and did not pay them the required "spread of hours" compensation when required by New York

Labor Law.

143.    As a result of Defendants' willful and unlawful conduct, Plaintiffs and members

of the Class are entitled to an award of damages, including liquidated damages, in an amount to

be determined at trial, pre- and post-judgment interest, and costs and attorneys' fees.

**FIFTH CLAIM FOR RELIEF**
**(FLSA Late Payment of Wages, 29 U.S.C. § 206, et seq.)**
**(Brought by Plaintiffs on Behalf of Themselves**
**and the FLSA Collective Plaintiffs)**

144.    Plaintiffs reallege and incorporate by reference all preceding paragraphs as if they

were fully set forth again at length herein.

145.    At all relevant times, Defendants have been, and continue to be, an "employer"

engaged in interstate "commerce" and/or in the production of "goods" for "commerce," within

the meaning of the FLSA, 29 U.S.C. § 203.  At all relevant times, Defendants have employed

"employee[s]," including Plaintiffs.

146.     On multiple occasions during the statute of limitations period covered by these claims, Defendants knowingly failed to timely pay Plaintiffs their earned wages on their regularly-scheduled pay day, resulting in the late payment of wages.

147.     On multiple occasions during the statute of limitations period covered by these claims, Defendants knowingly provided Plaintiffs with paychecks without sufficient funds to pay them, resulting in bounced paychecks, the late payment of wages, and the payment by Plaintiffs of bank fees associated with Defendants' bounced checks.

148.     The aforesaid conduct of Defendants was knowing, intentional, and willful.

149.     By their aforesaid conduct, Defendants willfully violated the provisions of the FLSA regarding payment of wages, 29 U.S.C. § 206, et seq.

150.     Plaintiffs are thereby entitled to recover from Defendants, jointly and severally, liquidated (double) damages in the amount of Plaintiffs' respective untimely paid wages, as provided by the FLSA for wage violations, as well as compensatory damages for bank fees paid by Plaintiffs, interest, attorneys' fees and costs, and such other legal and equitable relief as this Court deems just and proper.

**SIXTH CLAIM FOR RELIEF**
**(New York State Late Payment of Wages Violations**
**New York Minimum Wage Act, N.Y. Stat. § 190 et seq.)**
**(Brought by Plaintiffs on Behalf of Themselves and the Class)**

151.     Plaintiffs reallege and incorporate by reference all preceding paragraphs as if they were fully set forth again at length herein.

152.     At all relevant times, Defendants have been, and continue to be, an "employer" within the meaning of the NYLL, § 190, et seq. At all relevant times, Defendants have employed "employee[s]," including Plaintiffs.

153. Defendants did not pay Plaintiffs—who were manual laborers—on a weekly basis.

154. Instead, Defendants issued paychecks to Plaintiffs twice each month.

155. In addition, on multiple occasions during the statute of limitations period covered by these claims, Defendants knowingly failed to timely pay Plaintiffs their earned wages on their regularly-scheduled pay day, resulting in the late payment of wages.

156. On multiple occasions during the statute of limitations period covered by these claims, Defendants knowingly provided Plaintiffs with paychecks without sufficient funds to pay them, resulting in bounced paychecks, the late payment of wages, and the payment by Plaintiffs of bank fees associated with Defendants' bounced checks.

157. The aforesaid conduct of Defendants was knowing, intentional, and willful.

158. By their aforesaid conduct, Defendants willfully violated the provisions of the NYLL regarding timely payment of wages, NYLL Art. 6 § 191, et seq.

159. Plaintiffs are thereby entitled to recover from Defendants, jointly and severally, liquidated (double) damages in the amount of Plaintiffs' respective untimely paid wages, as provided by the NYLL for wage violations, as well as compensatory damages for bank fees paid by Plaintiffs, interest, attorneys' fees and costs, and such other legal and equitable relief as this Court deems just and proper.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and the members of the Class, pray for relief as follows:

A. An award of damages, according to proof, including back pay, front pay, punitive damages, and liquidated damages, to be paid by Defendants;

B.     Designation of this action as a class action pursuant to CPLR § 901;

C.     Designation of Plaintiffs as the Representatives of the Class;

D.     An award of damages, according to proof, including liquidated damages, to be paid by Defendants;

E.     An award of damages, according to proof, including, back pay, front pay, compensatory damages, emotional distress damages, punitive damages, and liquidated damages, to be paid by Defendants;

F.     Penalties available under applicable laws;

G.     Costs of action incurred herein, including expert fees;

H.     Attorneys' fees, including fees pursuant to N.Y. Lab. L. § 663, and other applicable statutes;

I.     Pre-judgment and post-judgment interest, as provided by law; and

J.     Such other and further legal and equitable relief as this Court deems necessary, just and proper.


Dated:  New York, New York                  Respectfully submitted,
        January 27, 2021
                                            **JOSEPH & KIRSCHENBAUM LLP**


                                    By: */s/ D. Maimon Kirschenbaum*
                                        D. Maimon Kirschenbaum
                                        Josef Nussbaum
                                        32 Broadway, Suite 601
                                        New York, NY 10004
                                        Tel: (212) 688-5640
                                        Fax: (212) 688-2548

                                    *Attorneys for Named Plaintiffs and*
                                    *proposed Class*

## **<u>DEMAND FOR JURY TRIAL</u>**

Plaintiffs hereby demand a jury trial on all causes of action and claims with respect to which they have a right to jury trial.