# JOSEPH & KIRSCHENBAUM LLP
Attorneys at Law

| | |
|---|---:|
| Charles Joseph | 32 Broadway, Suite 601 |
| D. Maimon Kirschenbaum | New York, NY 10004 |
| Denise Schulman | Phone 212) 688-5640 |
| Josef Nussbaum | Fax (212) 688-2548 |
| Lucas Buzzard | www.jk-llp.com |

July 21, 2021

**VIA ECF**

Honorable Gabriel W. Gorenstein
United States District Court
Southern District of New York
Daniel Patrick Moynihan Courthouse
500 Pearl St. New York, NY 10007

   Re: *Sanchez et al v. KTG Multiservices, Inc. et al*, **21 CV 751 (AJN)(GWG)**

Dear Judge Gorenstein:

  We represent the Plaintiffs in the above-referenced matter. We write pursuant to Section 2 of the Court's Individual Practices to respectfully request a teleconference with the Court under Local Rule 37.2.

  As set forth in greater detail below, Defendants refuse to provide complete discovery responses despite their assurances to the Court and Plaintiffs that they would do so by July 19, 2021. Specifically, although Defendants previously represented that they would provide class-wide payroll and timekeeping information, they have in fact produced virtually nothing. Similarly, despite their assurances to the contrary, Defendants have still not produced all the contracts and invoices they issued to their customers. Finally, Defendants insist on producing Microsoft Excel files in PDF format despite Plaintiffs' unambiguous discovery requests seeking these files in their native format. In short, Defendants are attempting to hide the ball by continuing to selectively produce documents. Making matters worse, Defendants unilaterally cancelled the Court-Ordered July 20, 2021 meet and confer, thus hampering Plaintiffs' ability to fully comply with Section 2 of the Court's Individual Practices.[1]

---

[1] Pursuant to Section 2 of the Court's Individual Practices, the undersigned certifies that I met and conferred telephonically with defense counsel, Kevin Johnson, on the mornings of June 21 and 24, 2021 and July 7 and 9, 2021. The first two conferences lasted approximately 15 minutes each, the third conference was approximately 20 minutes and the fourth conference was almost two hours long. At the three most recent conferences, I informed Mr. Johnson that if we could not resolve the issues we would request a conference with the Court. To be sure, at the June 24th conference, Mr. Johnson informed me that he was dealing with a personal issue and was thus behind in his discovery responses. At that time, he requested and I agreed to a one week extension for him to respond. Since that time, Mr. Johnson has not requested any further accommodation, and in fact the Parties were able to agree on the specific categories of documents that Defendants would produce and submitted that agreement to the Court on July 12, 2021. Defendants have not complied with their promises in that letter and thus we are left at an impasse.

**I.    Relevant Background and Status of Discovery**

Defendants own and operate a cleaning and maintenance services company that performs various recurring cleaning and maintenance services in the New York City area. Plaintiffs worked as cleaning and building maintenance workers during the time periods covered by the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL").

In their Complaint, Plaintiffs allege—on behalf of themselves and a putative Fed. R. Civ. P. Rule 23 class—that Defendants have contracts with companies in the New York City area in which Defendants agree to provide cleaning and maintenance services. Plaintiffs and putative class members worked for Defendants to provide the "on the ground" cleaning and maintenance services. Despite their job duties and schedules being entirely controlled by Defendants, Plaintiffs were illegally misclassified as independent contractors rather than employees. Plaintiffs allege that, as a result of this misclassification, Defendants violated various wage and hour laws, including that they failed to pay cleaning and maintenance workers proper overtime pay when they worked more than 40 hours in a week.

Depositions in this case were originally due to be completed by July 15, 2021, and all discovery was to be completed by July 30, 2021. (Dkt. No. 26.) On April 26, 2021, in advance of the initial conference, Plaintiffs informed the Court that despite our best efforts to meet and confer and agree on the scope of discovery, we had been unable to reach an agreement with Defendants with respect to the scope of class-wide discovery. Specifically, we informed the Court that Plaintiffs intended to seek class-wide payroll information and that we were unable get a straight answer from Defendants as to whether or not they would produce that information. (Dkt. No. 20.) Defendants did not respond to Plaintiffs' letter and, on May 12, 2021, Your Honor issued an Order stating that Plaintiffs are entitled to such discovery as may be relevant to the factors listed in Fed. R. Civ. P. 23 – including commonality and typicality. (Dkt. No. 28.) The Court further ruled that "[t]o speed things along, the Court will require that any objection by defendants to a discovery request on the ground that it improperly seeks information regarding putative class members shall be made within 7 days of service of the request." *Id*.

On May 14, 2021, Plaintiffs served class-wide requests for the production of documents and interrogatories on all Defendants. Defendants did not interpose any objections to class-wide discovery in the seven day window provided for in the Court's May 12th Order (*i.e.*, by May 21, 2021). In fact, Defendants did not provide any responses or objections at all until July 7, 2021, more than three weeks after their responses were due. These responses were only produced after concerted prodding by the undersigned, including three meet and confer phone calls with defense counsel and numerous follow up emails threatening to seek the Court's intervention.

The responses Defendants produced were inadequate and, on July 9, 2021, the Parties again met and conferred. In this meeting, Plaintiffs consented to requesting an extension of the discovery deadline provided that Defendants agreed to produce significant additional documents. Defendants agreed to the production, and in a July 12, 2021 letter to the Court, they sought an extension of the discovery deadline. This letter also included a list of 14 categories of documents Defendants agreed to produce and/or supplement by July 19, 2021. (*See* Dkt. No. 29 at pg. 2.) The Parties also agreed to meet and confer at 10:30 a.m. on the day after the documents were produced to review the status of discovery. Finally, the Parties proposed that depositions would take place

between July 26 and 29. *Id*. On July 13, 2021, Your Honor So Ordered the request for an extension as well as the proposed discovery plan (the "July 13th Order"). (*See* Dkt. No. 30.)

## II. The Outstanding Discovery

Despite their express agreement and the July 13th Order, and without any explanation, Defendants did not produce any documents on July 19, 2021. However, yesterday morning – approximately 30 minutes before the Parties' scheduled meet and confer – Defendants finally supplemented their document responses. However, these responses are still incomplete and do not fully satisfy Defendants' commitments in their discovery responses or the requirements of the July 13th Order. Moreover, despite the So Ordered agreement to meet and confer, Defendants unilaterally cancelled the Parties' conference and stated that, going forward, they would only be available to confer via email.

Attached hereto as Exhibit A is a copy of Defendants' formal responses to the 14 items listed in the July 13th Order. As can be seen from this document, Defendants' responses and their failure to produce class-wide documents fall woefully short of compliance with the July 13th Order. Accordingly, below, we set forth a list of the documents/information that Plaintiffs have been unsuccessfully trying to secure from Defendants and for which we seek the Court's assistance:

### A. Class-wide Payroll Records

In Item Nos. 3, 5, 7, and 8 of the July 13th Order, Defendants agreed to provide complete time records, schedules and records of payments for all putative class members. However, to date Defendants have made only a partial production of these documents with respect to the named Plaintiffs only, as well as a partial production of bank records. This production is woefully deficient. Specifically, the types documents that Defendants produced for Plaintiffs regarding time records, schedules, and records of payment are:

1) "Pay Information" sheets signed by cleaners (*e.g.*, Exhibit B[2]);
2) Bank records reflecting checks issued to cleaners (*e.g.*, Exhibit C);
3) Records of hours cleaners worked sent via electronic messages (*e.g.*, Exhibit D);
4) Excel spreadsheets with the hours Defendants allegedly paid Plaintiffs (*e.g.*, Exhibit E);
5) Excel Spreadsheets with "payment" records (*e.g.*, Exhibit F); and
6) "Daily Time Cards" (*e.g.*, Exhibit G).

Defendants' assurances in the July 13th Order regarding class-wide production cover all records such as those in Exhibits B - G above. However, with the exception of bank records, Defendants have not produced *any* of these records for *any* putative class members.

With respect to bank records, the only records Defendants produced in this case are records for KTG Multiservices Corp. ("KTG") accounts held at Bank of America from February 2020 until March 2021. With the exception of a copy of one check issued to Plaintiff Posada in 2019, Defendants have not produced bank records from the rest of the statute of limitations period, which extends back to January 2015, or from any other banks at which KTG held

---

[2] These documents were produced by Defendants pre-Answer and so they are not Bates stamped.

accounts.[3] Nor have they produced any bank records at all for Defendant AAC Maintenance Inc. ("AAC"). They have failed to do so despite the fact that the undersigned has, on numerous occasions, pointed defense counsel to records of payments Plaintiffs received from both KTG and AAC on checks drawn from JP Morgan Chase accounts in 2018. (Attached hereto as Exhibit H are copies of these checks). In their most recent response on this issue, Defendants simply state that they "are still retrieving the bank statements prior to January 2018 and other bank accounts. The same have been requested and will be delivered upon retrieval from the bank." (Ex. A at No. 5.[4]) This response is demonstrative of Defendants' overall lackadaisical attitude towards discovery as, in their So Ordered July 12th letter to the Court, they unequivocally stated they would produce this information and now—ten weeks since Plaintiffs served their requests and on the eve of depositions—they provide no timetable as to when we can expect these documents, if at all.

To be sure, some of the payroll documents Defendants produced directly support Plaintiffs' claims that they were paid straight time for overtime. For example, for the time period of February 12-26, 2020, Defendants issued Plaintiff Posada a check for $1,920. (*See* Exhibit J). Defendants produced records of Whatsapp Messenger conversations showing that Plaintiff Posada worked 120 hours during that time period. (*See* Exhibit X with the relevant entries for Mr. Posada circled.) Specifically, the reported hours during this time period were:

| Date | Feb 12 | Feb 13 | Feb 14 | Feb 16 | Feb 17 | Feb 18 | Feb 19 | Feb 20 | Feb 21 | Feb 23 | Feb 24 | Feb 25 | Feb 26 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Hours | 9.5 | 9.5 | 8.5 | 9 | 9 | 9 | 10.5 | 10.5 | 8.5 | 9 | 8.5 | 9 | 9.5 | 120 |

*See id*. As Mr. Posada was paid $16 an hour during this time period, he was thus paid $1,920 (120 hours x $16 = $1,920). In other words, Defendants' own records indicate that Mr. Posada worked roughly 40 hours of overtime during this time period but was not paid an overtime premium. (Plaintiffs can provide additional examples of this scheme, if necessary.) Accordingly, it is not surprising that Defendants are trying to hide the ball.

In short, Plaintiffs are entitled to all payroll and time records or all putative class members, and Defendants are, without explanation, simply withholding this information.

### B. Customer Contracts/Invoices

In Item No. 4 of the July 13th Order Defendants agreed they would produce copies of all contracts and invoices they held or issued to customers. They also confirmed that if they did not provide complete records, they would provide a written explanation as to why they had not done so. (Ex. A at No. 4.) To date, Defendants have produced only 12 contracts and a handful of

---

[3] Yesterday, Defendants produced one additional check from the Chase account but they have still not produced all bank statements despite their assurances that they would do so.

[4] S*ee also* Exhibit I ("Document 000841 is a check from the Chase made to Oscar Posada, which was issued from a Chase account, an account not used to regularly pay or compensate Plaintiffs or other alleged Class Members.") Defendants make this claim despite the fact that (a) they agreed to produce all bank records, and (b) Plaintiffs have pointed to checks issued to Mr. Posada in two different years which were drawn from the Chase account.

invoices.  This production appears to be incomplete on its face.  As an initial matter, Plaintiff Posada performed work for Defendants at a clothing store in Manhattan. (*See* Dkt. No. 1 at ¶ 102.) However, none of the contracts or invoices Defendants produced cover any work performed at that location. In addition, despite producing 12-14 contracts they held with customers, Defendants produced only a handful of invoices issued to only one of these customers during limited time periods.  As KTG's contracts include a statement that "KTG will submit invoices monthly on the first of every month," it is clear that many invoices have not yet been produced. (*See, e.g.*, Exhibit L).  Finally, Defendants have not produced any contracts or invoices for AAC at all.  In short, Defendants have obviously not produced all the contracts and invoices they held with and issued to customers and, despite their unambiguous assurance in the July 13th Order, they have provided no explanation as to why this information has not been produced.

### C. Communications from/to Defendants

In Item Nos. 9 and 10 of the July 13th Order, Defendants agreed to provide (a) all communications with putative class members, and (b) all communications concerning class member scheduling.  The documents produced to date show that Defendants communicated with cleaners via electronic messaging services.  These communications touch upon the three major disputes in this case namely, (1) the control Defendants exercised over putative class members (liability), (2) the commonality of the putative class's claims (classability), and (3) the number of hours class members worked (damages).  As outlined above, Defendants have produced a handful of electronic communications with the named Plaintiffs concerning hours worked during a limited time period.  They have also not produced any such communications from prior to 2020.

In their responses, Defendants simply state that they "are retrieving what messages they can from whatsapp and the same will be served promptly upon retrieval." (Ex. A at Nos. 9, 10.) Again, this response is emblematic of Defendants' overall approach to discovery in providing no timeframe as to when (or even if) documents will be produced despite ten weeks having passed since Plaintiffs served their demands.

### D. Defendants Refuse to Produce Excel Files in their Native Format

Finally, Defendants produced a handful of copies of Microsoft Excel spreadsheets in PDF format.  However, despite the clear instructions in our requests for production, Defendants insist that they do not have to provide the files in native format. Fed. R. Civ. P. Rule 34(b)(2)(c) states that a party issuing a request "may specify the form or forms in which electronically stored information is to be produced." Here, page 1 of Plaintiffs' requests for the production of documents clearly states that "[e]lectronically stored documents and information shall be produced electronically in native format." (*See* Exhibit M at pg. 1.) Accordingly, Defendants' intransigence on this issue is baseless.

For all the foregoing reasons, Plaintiffs respectfully request that the Court (a) hold a teleconference to discuss these issues and a plan for discovery going forward, and (b) Order such other and further relief as the Court deems just and proper to ensure that Defendants comply with their discovery obligations.

We thank the Court for its attention to this matter.

Respectfully submitted,

**JOSEPH & KIRSCHENBAUM LLP**

/s/*Josef Nussbaum*
Josef Nussbaum
32 Broadway, Suite 601
New York, NY 10004
(212) 688-5640

cc: All Counsel of Record (via ECF)