UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

JAVIER TORRES SANCHEZ and
OSCAR DAVID POSADA, *on behalf of
themselves and others similarly
situated,*

                                   Plaintiffs,

                    -v.-

KTG MULTISERVICES, INC.; AAC
MAINTENANCE CORP.; ANDREA
CATALINA GONZALEZ; ALVEIRO
ECHEVERRI; ALEJANDRO ACOSTA;
and ROSA MARTINEZ,

                                   Defendants.

---

21 Civ. 751 (KPF) (GWG)

**OPINION AND ORDER
ADOPTING REPORT AND
RECOMMENDATION**

KATHERINE POLK FAILLA, District Judge:

Pending before the Court is the June 6, 2022 Report and

Recommendation issued by Magistrate Judge Gabriel W. Gorenstein (the

"Report"), addressing the motion of AAC Maintenance Corporation ("AAC"),

Alejandro Acosta, and Alveiro Echeverri (collectively, the "Moving Defendants")

for summary judgment pursuant to Federal Rule of Civil Procedure 56.  In the

Report, Judge Gorenstein recommends granting the Moving Defendants'

motion as to AAC and Acosta and denying the motion as to Echeverri.  The

Court has examined the Report and notes that no party has filed an objection

within the fourteen-day period from its service provided for by 28 U.S.C.

§ 636(b)(1) and Federal Rule of Civil Procedure 72(b).  For the reasons that

follow, the Court finds no error in the Report and adopts it in its entirety.

## BACKGROUND[1]

The Court assumes familiarity with the relevant facts set forth in the Report and provides only a brief recitation of the relevant factual and procedural background here. To review, Plaintiffs Javier Torres Sanchez and Oscar David Posada bring this wage-and-hour action against the Moving Defendants; KTG Multiservices, Inc.; Andrea Catalina Gonzalez; and Rosa Martinez (collectively, "Defendants"), asserting claims on behalf of themselves and others similarly situated under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201-219, and the New York Labor Law ("NYLL"), N.Y. Lab. Law §§ 195, 198, 650-665. (Report 1). The case was initially assigned to Judge Alison J. Nathan, and was reassigned to the undersigned on April 7, 2022.

Plaintiffs filed the underlying complaint in this case on January 27, 2021. (Dkt. #1). Defendants then filed an answer to the complaint on March 24, 2021. (Dkt. #13). On May 12, 2021, Judge Nathan referred the case to Judge Gorenstein for general pretrial purposes (Dkt. #25) and entered the parties' Civil Case Management Plan and Scheduling Order (Dkt. #26).

Following discovery, on February 3, 2022, the Moving Defendants filed their motion for summary judgment and supporting papers, arguing that Plaintiffs' claims against them must be dismissed because no reasonable factfinder could find that the Moving Defendants were Plaintiffs' employers within the meaning of the FLSA or NYLL. (Dkt. #61-65). Plaintiffs filed their

---

[1]     This Opinion draws its fact primarily from the Report. (Dkt. #72, copy attached).

brief and supporting papers in opposition to the Moving Defendants' motion on March 3, 2022. (Dkt. #66-69). On March 4, 2022, Judge Nathan referred the Moving Defendants' pending motion for summary judgment to Judge Gorenstein for a report and recommendation. (Dkt. #70). The Moving Defendants then filed a reply brief on March 17, 2022. (Dkt. #71).

Judge Gorenstein issued the Report on June 6, 2022, recommending that summary judgment be granted as to AAC and Acosta but denied as to Echeverri. (Report 13). More specifically, Judge Gorenstein concluded that a reasonable factfinder could find that Echeverri, but not AAC or Acosta, was Plaintiffs' employer. (*Id.* at 12-13). Judge Gorenstein also stated that the parties had fourteen days from service of the Report to file any objections (*i.e.,* until June 21, 2022), and warned that if the parties failed to file a timely objection, they would not be permitted to raise any objections to the Report on appeal. (*Id.* at 13). To date, no objections to the Report have been filed.

## DISCUSSION

When reviewing a magistrate judge's report and recommendation, a district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). "To accept those portions of the report to which no timely objection has been made, ... a district court need only satisfy itself that there is no clear error on the face of the record." *Herrara* v. *12 Water St. Gourmet Cafe, Ltd.*, No. 13 Civ. 4370 (JMF), 2016 WL 1268266, at *1 (S.D.N.Y. Mar. 31, 2016). A magistrate judge's decision is clearly erroneous only if the district court is "left with the

3

definite and firm conviction that a mistake has been committed." *Easley* v. *Cromartie*, 532 U.S. 234, 242 (2001) (quoting *United States* v. *U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)). "A party's failure to object to a report and recommendation, after receiving clear notice of the consequences of such a failure, operates as a waiver of the party's right both to object to the report and recommendation and to obtain appellate review." *Grady* v. *Conway*, No. 11 Civ. 7277 (KPF) (FM), 2015 WL 5008463, at *3 (S.D.N.Y. Aug. 24, 2015) (citing, among other cases, *Frank* v. *Johnson*, 968 F.2d 298, 300 (2d Cir. 1992)).

Here, the parties have waived their right to object and to obtain appellate review by failing to file timely objections to the Report. Even so, the Court has reviewed the parties' submissions before Judge Gorenstein and the Report, and finds that the Report's reasoning is sound and grounded in fact and law. Accordingly, the Court finds no clear error and adopts the Report in full.

## CONCLUSION

For the foregoing reasons, the Court adopts the Report in its entirety, and GRANTS in part and DENIES in part the Moving Defendants' motion for summary judgment. The Court GRANTS the motion as to all claims against AAC and Acosta and DENIES the motion as to all claims against Echeverri.

The parties are hereby ORDERED to file a joint letter stating their availability for trial in the first quarter of 2023 on or before **July 18, 2022**.

The Clerk of Court is directed to terminate the motion at docket entry 61.

SO ORDERED.

Dated:     July 5, 2022
           New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
JAVIER TORRES SANCHEZ et al.,                       :

                                                    :    REPORT & RECOMMENDATION
                              Plaintiffs,
                                                    :    21 Civ. 751 (KPF) (GWG)
            -v.-
                                                    :
KTG MULTISERVICES, INC. et al.,
                                                    :

                              Defendants.           :
-------------------------------------------------------------X

**GABRIEL W. GORENSTEIN, United States Magistrate Judge**

        Plaintiffs Javier Torres Sanchez and Oscar David Posada, suing individually and on

behalf of all others similarly situated, bring this case against defendants KTG Multiservices, Inc.

("KTG"), AAC Maintenance Corp. ("AAC"), Andrea Catalina Gonzalez, Alveiro Echeverri,

Alejandro Acosta, and Rosa Martinez, alleging violations of the Fair Labor Standards Act, 29

U.S.C. § 201, et seq. ("FLSA"), and the New York Labor Law, § 65, et seq. ("NYLL").  See

Complaint, filed Jan. 27, 2021 (Docket # 1) ("Comp.").  AAC, Acosta, and Echeverri have

moved for summary judgment dismissing all claims against them.[1]  For the reasons that follow,

defendants' motion should be granted as to AAC and Acosta, and denied as to Echeverri.

I.      FACTS

_____

        [1]  Motion for Summary Judgment, filed Feb. 3, 2022 (Docket # 61); Declaration of Kevin
Johnson in Support, filed Feb. 3, 2022 (Docket # 62) ("Johnson Decl."); Defendants' Statement
of Facts Pursuant to F.R.C.P. 56.1, filed Feb. 3, 2022 (Docket # 63); Memorandum of Law in
Support, filed Feb. 4, 2022 (Docket # 65) ("Def. Mem."); Memorandum of Law in Opposition,
filed Mar. 3, 2022 (Docket # 66) ("Pl. Mem."); Declaration of Javier Torres Sanchez in
Opposition, filed Mar. 3, 2022 (Docket # 67) ("Sanchez Decl."); Declaration of Josef Nussbaum
in Opposition, filed Mar. 3, 2022 (Docket # 68) ("Nussbaum Decl."); Counter Statement of
Material Facts in Dispute Pursuant to Local Civil Rule 56.1, filed Mar. 3, 2022 (Docket # 69)
("Pl. 56.1 Statement"); Reply Memorandum of Law, filed Mar. 17, 2022 (Docket # 71).

Unless otherwise stated, the following facts are either undisputed or taken in the light most favorable to plaintiffs, the non-moving party.

KTG is a cleaning company that was started by Gonzalez, its President and sole owner. See Deposition of Andrea Catalina Gonzalez, annexed as Ex. D to Johnson Decl. (Docket # 62-4) ("Gonzalez Tr."), 15, 33. Gonzalez's husband, Echeverri, has been identified by KTG's website as its Chief Operating Officer ("COO"). See KTG Website, annexed as Ex. J to Nussbaum Decl. (Docket # 68-10) (listing "Alveiro Echeverri" as COO); Gonzalez Tr. 45-47 (admitting that Echeverri is listed as the COO on KTG's website but denying that he is an "executive"). Martinez was a manager at KTG during the relevant period. See Deposition of Rosa Martinez, annexed as Ex. E to Johnson Decl. (Docket # 62-5) ("Martinez Tr."), 30.

Sanchez and Posada began working for KTG in 2018. See Sanchez Decl. ¶ 1; Deposition of Oscar David Posada, annexed as Ex. B to Johnson Decl. (Docket # 62-2) ("Posada Tr,"), 25. When Sanchez began with KTG, Gonzalez introduced Echeverri as his "boss[]" and told Sanchez that "the company is owned by us" and that she and Echeverri "ran the company." Sanchez Decl. ¶¶ 4-6. Although plaintiffs admit that Echeverri is not in fact an owner of KTG, see Pl. 56.1 Statement ¶ 7, they have submitted evidence that Gonzalez commonly referred to KTG management decisions as being joint decisions made by herself and Echeverri. See Sanchez Decl. ¶¶ 10-12. Echeverri was frequently present at KTG's offices. See id. ¶¶ 14-15. At KTG's offices, Echeverri told Sanchez how to clock-in and what job functions to perform. See id. ¶¶ 9, 13, 17, 19-23. Echeverri told Sanchez to relay such instructions to Sanchez's co-workers. See id. ¶¶ 16-18. Echeverri distributed paychecks to Sanchez, on at least two occasions drawing on funds from a bank account he jointly maintained with Gonzalez. See id. ¶¶ 24-27; Checks dated Apr. 30, 2019, annexed as Exs. A-B to Sanchez Decl. (Docket ## 67-1,

67-2) ("KTG Checks").  However, Echeverri never discussed with plaintiffs their rate of pay, and he never signed their paychecks.  <u>See</u> Deposition of Javier Torres Sanchez, annexed as Ex. A to Johnson Decl. (Docket # 62-1) ("Sanchez Tr."), 106; Posada Tr. 51-52.  Although Echeverri did not schedule the plaintiffs' hours of work, Sanchez Tr. 105-06; Posada Tr. 52, Echeverri frequently instructed Sanchez "that [Sanchez] should not work any time outside of the time that KTG had instructed [him] to work," and that Sanchez should "relay the same instruction to [his] coworkers," "so that KTG would avoid incurring additional payroll expenses."  Sanchez Decl. ¶¶ 17-19.

AAC is also a cleaning company.  <u>See</u> Gonzalez Tr. 35.  AAC has been in operation since 2016, and is run by Acosta, its sole owner.  <u>See</u> Deposition of Alejandro Acosta, annexed as Ex. D to Nussbaum Decl. (Docket # 68-4) ("Acosta Tr."), 8.  At his deposition, Acosta testified that he has the authority to hire and fire AAC employees, that he is responsible for scheduling AAC employees and setting their rates of pay, that he signs and provides AAC employees' paychecks, and that he maintains AAC's company records.  <u>See</u> <u>id.</u> 19-21, 31.  During the relevant period, AAC subcontracted with KTG to perform cleaning services.  <u>See</u> <u>id.</u> 13, 28.  AAC would pay KTG $18 per hour worked by KTG personnel.  <u>See</u> Martinez Tr. 28-29.  On a few occasions in early 2018, Sanchez and Posada received paychecks that had been signed by Acosta.  <u>See</u> Acosta Tr. 14; Sanchez Tr. 11-15; Deposition of Oscar David Posada, annexed as Ex. B to Nussbaum Decl. (Docket # 68-2) ("Posada Tr. 2"), 77-78; Checks dated Mar. 1, 2018 and Mar. 15, 2018, annexed as Ex. E to Nussbaum Decl. (Docket # 68-5) ("Acosta Checks").  Neither Sanchez nor Posada ever personally met Acosta, <u>see</u> Sanchez Tr. 10; Posada Tr. 16-17, although Sanchez spoke with Acosta over the phone twice regarding overdue paychecks in 2018, <u>see</u> Sanchez Tr. 10-14.

II.    LEGAL STANDARD

Rule 56(a) of the Federal Rules of Civil Procedure provides that a court shall grant summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  In determining whether a genuine issue of material fact exists, "[t]he evidence of the non-movant is to be believed" and the court must draw "all justifiable inferences" in favor of the nonmoving party.  Id. at 255 (citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59 (1970)); accord Morales v. Quintel Ent., Inc., 249 F.3d 115, 121 (2d Cir. 2001) ("[A]ll reasonable inferences must be drawn against the party whose motion is under consideration.").

Once the moving party has shown that there is no genuine issue as to any material fact and that it is entitled to a judgment as a matter of law, "the nonmoving party must come forward with specific facts showing that there is a genuine issue for trial," Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (emphasis in original) (internal quotation omitted), and "may not rely on conclusory allegations or unsubstantiated speculation," Scotto v. Almenas, 143 F.3d 105, 114 (2d Cir. 1998) (citing cases).  See Fed. R. Civ. P. 56(c), (e).  In other words, the nonmovant must offer "concrete evidence from which a reasonable juror could return a verdict in his favor."  Anderson, 477 U.S. at 256.  Where "the nonmoving party bears the burden of proof at trial, summary judgment is warranted if the nonmovant fails to make a showing sufficient to establish the existence of an element essential to its case."  Nebraska v. Wyoming, 507 U.S. 584, 590 (1993) (punctuation and quotation omitted).  Thus, "[a] defendant moving for summary judgment must prevail if the plaintiff fails to come forward with enough

evidence to create a genuine factual issue to be tried with respect to an element essential to its case."  Allen v. Cuomo, 100 F.3d 253, 258 (2d Cir. 1996) (citing Anderson, 477 U.S. at 247-48); accord El-Nahal v. Yassky, 835 F.3d 248, 252, 256 (2d Cir. 2016).

III.    DISCUSSION

AAC, Acosta, and Echeverri seek summary judgment on the basis there is "no[] triable issue of fact that supports a claim of qualifying [them] as 'employers.'"  Def. Mem. at 3.

Plaintiffs' first argument is that defendants cannot obtain summary judgment because all their opening brief did was "baldly assert[] that there is an absence of evidence to support the nonmovant's claim."  Pl. Mem. at 10.  Plaintiffs cite to case law requiring that a movant for summary judgment either point to evidence that "negates" the non-movant's claims or identify the portions of the record that "demonstrate the absence of a genuine issue of material fact," Salahuddin v. Goord, 467 F.3d 263, 272-73 (2d Cir. 2006), and argue that defendants failed to do either of these.  Pl. Mem. at 9-12.

We reject this argument because defendants did exactly what they were required to do to support their motion: that is, their memorandum of law cited to portions of the record that supported their factual contentions that defendants were not employers.  See Def. Mem. at 3-5. And even if they had failed to do so, it would not justify denying summary judgment because the plaintiffs' opposition brief takes on the task of marshaling the evidence that plaintiffs contend supports their claims.  See Pl. Mem. at 12-15.  As was made clear in Nick's Garage, Inc. v. Progressive Casualty Insurance Co., 875 F.3d 107, 116 (2d Cir. 2017), such an "undertaking" by a party opposing a motion for summary judgment "cure[s]" any claimed error in the movant's initial submission.

We next discuss the law governing whether an individual or entity is an "employer" under the FLSA and NYLL, and then apply that law to the facts of this case.

A. Governing Law

1. "Employer" under the FLSA

The FLSA imposes liability on the "employer" of any person who violates the FLSA's minimum wage, overtime, and retaliation provisions. See 29 U.S.C. § 216(b), (e)(2). The FLSA defines "employer" as a "person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). It includes "an individual, partnership, association, corporation, business trust, legal representative, or any organized group of persons." See 29 U.S.C. § 203(a), (d).

The Second Circuit has held that an employment relationship exists under the FLSA when "the economic reality" is such that "the alleged employer possessed the power to control the workers in question." Herman v. RSR Sec. Servs. Ltd., 172 F.3d 132, 139 (2d Cir. 1999) (citing Carter v. Dutchess Cmty. Coll., 735 F.2d 8, 12 (2d Cir. 1984)); accord Graziadio v. Culinary Inst. of Am., 817 F.3d 415, 422 (2d Cir. 2016). Additionally, a worker performing a task may simultaneously do so on behalf of more than one "joint employers." Zheng v. Liberty Apparel Co., 355 F.3d 61, 66 (2d Cir. 2003). When two or more entities operate as joint employers of a given worker, each employer is jointly and severally liable for the FLSA violations of all other joint employers. See Ansoumana v. Gristede's Operating Corp., 255 F. Supp. 2d 184, 196 (S.D.N.Y. 2003).

The Second Circuit has developed several tests for determining whether a person or entity is an employer, including a joint employer. See Greenawalt v. AT&T Mobility LLC, 642 F. App'x 36, 37 (2d Cir. 2016) (citing Barfield v. N.Y.C. Health & Hosps. Corp., 537 F.3d 132,

142-43 (2d Cir. 2008)) (summary order).  The first test was articulated in <u>Carter</u>, 735 F.2d at 12,

and looks to whether an employer exercised "formal control" over a worker.  Under this test, a

court considers whether an entity: "(1) had the power to hire and fire the employees, (2)

supervised and controlled employee work schedules or conditions of employment, (3)

determined the rate and method of payment, and (4) maintained employment records."  <u>Id.</u> at 12.

A second test, articulated in <u>Brock v. Superior Care, Inc.</u>, 840 F.2d 1054, 1058-59 (2d

Cir. 1988), is "more relevant for distinguishing between independent contractors and

employees," <u>Velez v. Sanchez</u>, 693 F.3d 308, 326 (2d Cir. 2012), because it focuses on whether

"the workers depend upon someone else's business . . . or are in the business for themselves,"

<u>Brock</u>, 840 F.2d at 1059.  That test does not apply here because there is no claim that the

plaintiffs were independent contractors.

The third test, outlined in <u>Zheng</u>, 355 F.3d at 72-76, weighs six "nonexclusive and

overlapping" factors to determine if an employer had "functional control" over workers.  Neither

party here relies on the <u>Zheng</u> factors and therefore we do not consider them.

Finally, courts have used the "single integrated enterprise" or "single employer" doctrine

to determine whether it should "treat a group of distinct but closely affiliated entities as a single

employer for FLSA purposes." "  <u>Fernandez v. HR Parking</u>, 407 F. Supp. 445, 462 n. 5

(S.D.N.Y. 2019) (citation omitted).  Again, plaintiffs do not rely on this doctrine to argue that

any of the defendants is an employer and therefore we do not consider it.

2.      <u>"Employer" Under the NYLL</u>

The NYLL's definition of employment is nearly identical to the FLSA's.  <u>Compare</u> 29

U.S.C. § 203(g) ("'Employ' includes to suffer or permit to work."), <u>with</u> N.Y. Lab. Law § 2(7)

("'Employed' includes 'permitted or suffered to work.'").  "As a result, courts in this circuit

'hold that the New York Labor Law embodies the same standards for joint employment as the FLSA.'" Fernandez, 407 F. Supp. at 452 (quoting Chen v. St. Beat Sportswear, Inc., 364 F. Supp. 2d 269, 278 (E.D.N.Y. 2005)) (citing cases). "Accordingly, this Court's conclusions with respect to defendants' status as employers under the FLSA apply equally to defendants' status as employers under the NYLL." Id.

    B. Analysis

        1. Echeverri

            i. Power to Hire and Fire

First, we consider whether Echeverri possessed the power to hire and fire plaintiffs. In her deposition, Gonzalez testified that she "make[s] the decisions 100 percent." Gonzalez Tr. 46. Plaintiffs' attempt to create a triable issue of fact on this point rests on Echeverri's title as COO and his relationship with Gonzalez. See Pl. Mem. at 13. When Sanchez first spoke with Gonzalez, Gonzalez told him that "the company is owned by us," referring to herself and Echeverri. Sanchez Decl. ¶ 5. Gonzalez referred to herself and Echeverri as "the bosses," using the term "we" when issuing instructions to Sanchez. Id. ¶¶ 6, 10. Echeverri's actions were consistent with this characterization inasmuch as he directed Sanchez on how to report time, when to work, and what services to provide. See id. ¶¶ 13, 16-17, 19-23. Echeverri sometimes instructed Sanchez to convey these directions to co-workers. See id. ¶¶ 16-18. While it is a close question, we view this evidence — in particular Gonzalez's statement that Echeverri was one of two "bosses" of the company — as enough to allow the inference that Echeverri had the power to hire and fire. This factor therefore favors plaintiffs, but only slightly.

            ii. Control of Work Schedules and Conditions of Employment

The more supervision and control an entity exercises, the more likely it is an employer. See Zheng, 355 F.3d at 74-75. But "the law does not require an employer 'to look over his workers' shoulders every day in order to exercise control.'" Barfield, 537 F.3d at 147 (quoting Brock, 840 F.2d at 1060). As noted, Echeverri directed Sanchez on how to report time, when to work, and what services to provide. See Sanchez Decl. ¶¶ 13, 16-17, 19-23. Echeverri also instructed Sanchez to convey such directions to his co-workers. See id. ¶¶ 16-18. Moreover, Echeverri was frequently present at KTG's offices. See id. ¶¶ 14-15. A reasonable jury, relying on this evidence, could conclude that Echeverri's actions satisfied the second Carter factor.

### iii.    Determination of Rate and Method of Payment

Plaintiffs argue that "Echeverri was involved in employees' pay and determined their method of pay by paying employees on checks drawn on his personal account and by delivering paychecks directly to" Sanchez and Posada. Pl. Mem. at 13. Echeverri, however, did not sign any of the paychecks provided to Sanchez or Posada. See KTG Checks. The paychecks submitted by plaintiffs are each signed by Gonzalez and drawn from an account held jointly by Gonzalez and Echeverri. See id. Plaintiffs concede that Echeverri was not involved in any discussions or decisions about their rate of pay. See Sanchez Tr. 106 ("Q: Did [Echeverri] ever discuss with you your pay rate? A: No. [Gonzalez]."); Posada Tr. 51-52 ("Q: At that time, did you ever speak to [Echeverri] at all about being paid overtime, things you spoke to [Gonzalez] about in that regard? A: No, as a matter of fact, he would just hand over the checks. He would come in the car, he would not get out of it. He would hand the checks to a co-worker and he would just leave."). On the other hand, and as already discussed, Gonzalez told Sanchez that she and Echeverri "ran the company." Sanchez Decl. ¶¶ 4-6. And Gonzalez commonly referred to KTG management decisions as being joint decisions made by herself and Echeverri. See id.

¶¶ 10-12.  Also, Echeverri was frequently present at KTG's offices.  See id. ¶¶ 14-15.

Accordingly, even without direct evidence that Echeverri set rates or methods of payment, a

reasonable jury might draw the inference that Echeverri had such powers in light of the fact that

the owner considered him to be a joint manager.

iv.   Whether Defendants Maintained Employment Records

With respect to the fourth Carter factor, plaintiffs emphasize that "Echeverri . . . lived and

worked at the location at which [p]laintiffs' employment records were kept."  Pl. Mem. at 13.

Critically, however, plaintiffs do not allege that Echeverri himself created or maintained these

records.  Nor does Echeverri's deposition testimony suggest he did so.  In fact, plaintiffs fail to

describe the records to which they refer.  Therefore, the only facts supporting plaintiffs' position

are that Echeverri was present at KTG's offices and was married to Gonzalez.  Of course, merely

being married to the employer of a plaintiff and employed by the same business, without more,

does not make one an employer themselves.  And unlike in Quintanilla v. Suffolk Paving Corp.,

2019 WL 885933, at *13-14 (E.D.N.Y. Feb. 22, 2019), where the plaintiffs presented evidence

that the spouse and purported joint employer "played a substantial role in the maintenance of

employment records, insofar as she was responsible for the processing of [p]laintiffs' payroll

records and payment of union dues," here, Sanchez and Posada offer nothing besides Echeverri's

association with Gonzalez to indicate he had custody of the records.  This is inadequate to create

a genuine issue of material fact as to the fourth Carter factor.  See Irizarry v. Catsimatidis, 722

F.3d 99, 116 (2d Cir. 2013) ("Plaintiffs offer only that 'Catsimatidis works in the same office

where employment records are kept' and promoted the payroll director, essentially admitting that

Catsimatidis did not meet this factor." (internal citation omitted)).  Thus, the final Carter factor

favors Echeverri.

*      *      *

As the Second Circuit has stated, "the determination of whether an employer-employee relationship exists for purposes of the FLSA should be grounded in economic reality rather than technical concepts, . . . determined by reference not to isolated factors, but rather upon the circumstances of the whole activity." Barfield, 537 F.3d at 141 (citations and internal quotation marks omitted). We must determine whether the "economic reality" is such that the "alleged employer possessed the power to control the workers in question." Herman, 172 F.3d at 139. "The critical inquiry in determining whether an employer-employee relationship exists [is] the degree of control exercised by the purported employer over the results produced or the means used to achieve the results." Hart v. Rick's Cabaret Int'l, Inc., 967 F. Supp. 2d 901, 923 (S.D.N.Y. 2013) (quoting Bynog v. Cipriani Grp., Inc., 1 N.Y.3d 193, 198 (2003)).

The issue before us is whether a reasonable jury could find that Echeverri was a joint employer of the plaintiffs. As we have discussed, of the four Carter factors, a jury would be required to find that one favored Echeverri — that is, maintenance of employment records. However, it could reasonably find that the remaining factors pointed to his being an employer. The evidence as to these latter factors is in our view sufficient to allow a reasonable jury to find that Echeverri was a joint employer of Sanchez and Posada. Thus, this question should be presented to a jury rather than resolved on summary judgment.

   2.   Acosta & AAC

As to Acosta and AAC, the plaintiffs offer virtually no basis on which a jury could find that Acosta or AAC was their employer — with the exception of the evidence that in early 2018, Acosta signed Sanchez and Posada's paychecks. See Acosta Checks; Acosta Tr. 14; Sanchez Tr. 11-15; Posada Tr. 2 77-78. This circumstance, however, does not allow the inference that

Acosta <u>determined</u> either plaintiff's rate or method of pay (the third <u>Carter</u> factor).  This is particularly true given that these occurrences happened in a brief period in 2018 whereas Sanchez alleges he worked through March 2020 and Posada alleges he worked through October 2020.  <u>See</u> Comp. ¶¶ 37-38; <u>see also</u> Posada Tr. 22-23.  Notably, plaintiffs offer no evidence as to the other <u>Carter</u> factors.  The connection between Acosta or AAC and plaintiffs is thus virtually non-existent.  Indeed, plaintiffs have not disputed that Sanchez never met Acosta, and that Posada never even knew of him.  <u>See</u> Pl. 56.1 Statement ¶¶ 27, 35.  We reject plaintiffs' suggestion that Acosta's deposition testimony (the pages of which are not cited) shows "that he met all the <u>Carter</u> factors."  Pl. Mem. at 15.  Our review of the portion of the transcript presumably alluded to by plaintiffs, <u>see</u> Acosta Tr. 19-21, 31, shows only that Acosta testified that he had the authority to hire and fire <u>AAC</u> employees, that he was responsible for scheduling <u>AAC</u> employees and determining their rates of pay, and that he maintained <u>AAC's</u> records.  Plaintiffs' reliance on this testimony, however, begs the question of whether plaintiffs were in fact AAC employees in the first place.  Certainly, Acosta did not testify that this was the case and there is no evidence suggesting the plaintiffs were AAC employees.

The cases cited by plaintiffs in support of their effort to hold AAC and Acosta liable as employers involve situations where there was no dispute that the plaintiff worked for a particular entity and the only question was whether a high-level employee of that company exercised control over the employees.  <u>See</u> Pl. Mem. at 15 (citing <u>Irizarry</u>, 722 F.3d at 110; <u>Sethi v. Narod</u>, 974 F. Supp. 2d 162, 188 (E.D.N.Y. 2013); <u>Alvarado v. GC Dealer Servs.</u>, 511 F. Supp. 3d 321, 356-57 (E.D.N.Y. 2021)).  Here, by contrast, there has been no threshold showing that Sanchez or Posada were AAC employees.  Thus, evidence as to Acosta's control over AAC employees is not probative of Acosta's control over Sanchez and Posada.

Given the absence of evidence that Acosta or AAC exercised any control over plaintiffs as employees, no reasonable jury could find Acosta or AAC to be plaintiffs' employers.

IV.   <u>CONCLUSION</u>

For the foregoing reasons, defendants' motion for summary judgment (Docket # 61) should be granted as to all claims against Acosta and AAC, and denied as to all claims against Echeverri.

<b><u>PROCEDURE FOR FILING OBJECTIONS TO THIS<br>REPORT AND RECOMMENDATION</u></b>

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have fourteen (14) days (including weekends and holidays) from service of this Report and Recommendation to file any objections.  <u>See</u> <u>also</u> Fed. R. Civ. P. 6(a), (b), (d).  A party may respond to any objections within 14 days after being served.  Any objections and responses shall be filed with the Clerk of the Court.  Any request for an extension of time to file objections or responses must be directed to Judge Failla.  If a party fails to file timely objections, that party <u>will not be permitted to raise any objections to this Report and Recommendation on appeal</u>.  <u>See</u> <u>Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.</u>, 596 F.3d 84, 92 (2d Cir. 2010).

Dated: June 6, 2022
       New York, New York

GABRIEL W. GORENSTEIN
United States Magistrate Judge